No. 2014-1451

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

PLAS-PAK INDUSTRIES, INC.,

*Appellant*,

*v.*

RICHARD PARKS CORROSION TECHNOLOGIES, INC.,

*Appellee.*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board

# BRIEF OF APPELLEE RICHARD PARKS CORROSION TECHNOLOGIES, INC.

| | |
|---|---|
| THOMAS C. BASSO<br>ALAN L. BARRY<br>MATTHEW S. DICKE<br>SUZANNE E. KONRAD<br>K&L GATES LLP<br>70 West Madison Street<br>Suite 3100<br>Chicago, IL 60602-4207<br>Telephone (312) 372-1121<br>Facsimile (312) 827-8000 | MICHAEL T. MURPHY<br>K&L GATES LLP<br>1601 K Street, NW<br>Washington, DC 20006-1600<br>Telephone (202) 778-9000<br>Facsimile (202) 778-9100 |

*Attorneys for Appellee*

August 25, 2014

Form 9

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Plas-Pak Industries, Inc.                    v.  Richard Parks Corrosion Technologies, Inc.

No. 14-1451

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Appellee                                    certifies the following (use "None" if applicable; use extra sheets
if necessary):

1.      The full name of every party or amicus represented by me is:

Richard Parks Corrosion Technologies, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real
party in interest) represented by me is:

Sulzer Mixpac AG.  Richard Parks Corrosion Technologies, Inc. has an obligation to
assign the patent at issue in this case to Sulzer Mixpac AG.

3.      All parent corporations and any publicly held companies that own 10 percent or more
of the stock of the party or amicus curiae represented by me are:

Sulzer Ltd. is a parent corporation of Sulzer Mixpac AG.  Sulzer Ltd. is a publicly held company that is traded on the
Swiss Stock Exchange.  Richard Parks Corrosion Technologies, Inc. does not have a parent corporation, and no
publicly held company owns 10 percent or more of the stock of Richard Parks Corrosion Technologies, Inc.

4. ☑  The names of all law firms and the partners or associates that appeared for the party
or amicus now represented by me in the trial court or agency or are expected to appear in this
court are:

Thomas C. Basso, Michael T. Murphy, Alan L. Barry, Matthew S. Dicke and Suzanne E. Konrad of K&L
Gates LLP

May 12, 2014
_____
Date

_____
Signature of counsel

Thomas C. Basso
_____
Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

TABLE OF CONTENTS

Page

STATEMENT OF RELATED CASES ................................................................1

STATEMENT OF THE ISSUES.......................................................................1

STATEMENT OF THE FACTS ........................................................................2

SUMMARY OF THE ARGUMENT ................................................................3

ARGUMENT ....................................................................................................6

I.    STATEMENT OF THE STANDARD OF REVIEW..........................6

    A.    The Board's Findings as to the Teachings of *Kott* Should Be
Reviewed for Substantial Evidence ...........................................7

    B.    The Board's Determination of Intended Purpose Should Be
Reviewed for Substantial Evidence ...........................................8

    C.    *KSR* and the Proper Standard for Obviousness...........................9

II.   SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S
FINDING THAT *KOTT* FAILS TO DISCLOSE OR RENDER
OBVIOUS THE USE OF A FLEXIBLE HOSE DISPOSED
BETWEEN A MULTI-COMPONENT CARTRIDGE AND A
STATIC MIXING NOZZLE ..............................................................9

    A.    *Kott* Fails to Explicitly Disclose a Flexible Hose Disposed
between a Multi-Component Cartridge and a Static Mixing
Nozzle .........................................................................................9

        i.    Material Lines 34a and 34b Are Not Located
between a Static Mixing Nozzle and a Multi-
Component Cartridge ......................................................11

    B.    It Would Not Have Been Obvious to Include a Flexible
Hose between the Mixing Nozzle and Caulking Gun of *Kott*
because *Kott* Teaches Directly Connecting Its Caulking Gun
and Mixing Nozzle.....................................................................14

    C.    Plas-Pak's Proposed Combination of Elements from Claims
1 and 15 of *Kott* Fails to Disclose a Flexible Hose Disposed
between a Multi-Component Cartridge and a Static Mixing
Nozzle .......................................................................................16

D.  Providing a Flexible Hose between Mixing Nozzle 94 and Tubes 224a and 224b Would Not Have Been a Predictable Variation.................................................................................18

E.  Plas-Pak's New Arguments Regarding Claims 1 and 15 of *Kott* Have Been Waived............................................................19

III.  *WISE*, *ANSON*, *HANSEN* AND *HERMELE* FAIL TO REMEDY THE DEFICIENCIES OF *KOTT* ...............................................................21

IV.  SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT MODIFICATION OF THE DISPENSING APPARATUS OF *JACOBSEN* WITH A SPRAY TIP, A ROLLER OR A BRUSH WOULD RENDER THE DISPENSING APPARATUS OF *JACOBSEN* UNSUITABLE FOR ITS INTENDED PURPOSE ............................................................................22

A.  The Board Correctly Defined *Jacobsen*'s Intended Purpose as Dispensing Fluid Material into Cracks While Minimizing Leakage ....................................................................22

i.  Plas-Pak's References to *KSR* Are Inapposite to the Issue of Whether the Proposed Combination Would Have Rendered *Jacobsen* Unsuitable for its Intended Purpose ........................................................25

ii.  The Scope of *Jacobsen*'s Claims Is Not Dispositive of its Intended Purpose...............................26

B.  Substantial Evidence Supports the Board's Finding that Modifying the Apparatus of *Jacobsen* with the Spray Nozzle of *Hunter* Would Render the Dispensing Apparatus of *Jacobsen* Unsuitable for its Intended Purpose..........................26

C.  Substantial Evidence Supports the Board's Finding that Modifying the Apparatus of *Jacobsen* with the Paint Applicators of *Wise* or *Anson* Would Also Render the Dispensing Apparatus of *Jacobsen* Unsuitable for its Intended Purpose.................................................................27

D.  Plas-Pak's Reliance on *Mouttet* for its Alleged "High Level Ability" Test Has Been Waived................................................28

CONCLUSION .........................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Broadcom Corp. v. Emulex Corp.*
    732 F.3d 1325 (Fed. Cir. 2013) ................................................... 25, 26

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*
    567 F.3d 1314 (Fed. Cir. 2009) ............................................ 10, 25, 26

*Forshey v. Principi*
    284 F.3d 1335 (Fed. Cir. 2002) ................................................... 20, 29

*In re Baxter Int'l, Inc.*
    678 F.3d 1357 (Fed. Cir. 2012) ...........................................................6

*In re Berger*
    279 F.3d 975 (Fed. Cir. 2002) ..............................................................20

*In re Gartside*
    203 F.3d 1305 (Fed. Cir. 2000) ................................................. 6, 7, 19

*In re Icon Health & Fitness, Inc.*
    496 F.3d 1374 (Fed. Cir. 2006) ..................................................... 9, 22

*In re Kahn*
    441 F.3d 977 (Fed. Cir. 2006) ..........................................................6, 8

*In re Mouttet*
    686 F.3d 1322 (Fed. Cir. 2012) .................................................. passim

*In re Schreiber*
    128 F.3d 1473 (Fed.Cir.1997) ...........................................................20

*In re Watts*
    354 F.3d 1362 (Fed. Cir. 2004) ...................................... 19, 20, 21, 29

*KSR Int'l Co. v. Teleflex Inc.*
    550 U.S. 398 (2007) .................................................................... 10, 25

*Sage Prods., Inc. v. Devon Indus., Inc.*
    126 F.3d 1420 (Fed. Cir. 1997) .........................................................20

*Tec Air, Inc. v. Denso Mfg. Mich. Inc.*
    192 F.3d 1353 (Fed. Cir. 1999) ..................................................... 9, 22

## STATEMENT OF RELATED CASES

This case has not previously been appealed to this Court or to any other appellate court.

Federal Circuit Appeal No. 2014-1447, *Plas-Pak Industries v. Sulzer Mixpac AG*, involves U.S. Patent No. 7,815,384 ("the '384 Patent"). The '384 Patent is based on a continuation application of the patent at issue in this appeal, U.S. Patent No. 7,144,170 ("the '170 Patent"). On June 9, 2014, this Court issued an order stating that Appeal Nos. 2014-1447 and 2014-1451 are companion cases and will be assigned to the same merits panel for oral argument.

## STATEMENT OF THE ISSUES

Appellee disagrees with Appellant's broad statement of the issues as generally including whether the Board erred in affirming the patentability of all claims. Instead, this appeal is limited to the following two discrete issues:

1.     Whether the Board erred in affirming the Examiner's finding that *Kott* does not teach or suggest the use of a flexible hose disposed between and in fluid communication with a cartridge and a static mixing nozzle.

2.     Whether the Board erred in affirming the Examiner's finding that Plas-Pak's proposed modification of the *Jacobsen* device to include any of a spray tip, a roller or a brush would have rendered the *Jacobsen* device unsuitable for its intended purpose.

## STATEMENT OF THE FACTS

Appellee disagrees with Plas-Pak's characterization of both the '170 Patent and the references cited during the reexamination of the '170 Patent. As discussed in detail below, Plas-Pak overgeneralizes the teachings of the cited references in an attempt to persuade this Court that such references are properly combinable.

## I.     THE '170 PATENT

The '170 Patent is directed to a device for applying a coating using a multi-component cartridge, not directed solely to a multi-component industrial paint packaging system as Plas-Pak contends. JA87, Abstract; JA104, col. 11, l. 46. Independent Claim 1 recites, in part, a device that comprises: (1) a multi-component cartridge comprising at least two cylindrical cartridges, each cylindrical cartridge comprising an aperture; (2) a static mixing nozzle in fluid communication with each aperture; (3) at least one paint applicator selected from the group consisting of a roller, a brush, and a spray tip, in fluid communication with the nozzle; and (4) at least one flexible hose disposed between and in fluid communication with the cartridge and the nozzle. JA104, col. 11, l. 46-59.

## II.     U.S. PATENT NO. 6,241,125 B1 (*JACOBSEN*)

*Jacobsen* is not directed merely to "dispensing multiple component fluid materials from cartridges over an indefinite distances [*sic*] via flexible hoses before mixing the components and discharging the materials" as asserted by Plas-Pak.

Appellant's Brief, p. 17, l. 2-5.  Instead, *Jacobsen* addresses a specific problem - dispensing fluid materials directly into surface cracks while minimizing leakage. JA236, col. 1, l. 13-16 ("This invention relates to devices usable for dispensing fluid material(s) via conventional dispensing outlet nozzle(s) ***directly into a surface crack*** of a structure") (emphasis added); col. 2, l. 40-45 ("This invention relates to devices for establishing leakproof seated connections. . . for directing such fluid material into cracks in underlying structures").

## SUMMARY OF THE ARGUMENT

Plas-Pak contends the Board erred in determining the specific teachings of *Kott* and the intended purpose of *Jacobsen* - both of which are factual determinations reviewed only for substantial evidence.  The Board's non-obviousness analysis necessarily flows from these factual findings.  Plas-Pak attempts to disguise issues of fact as issues of law and introduces new theories for the first time on appeal.  At best, Plas-Pak contends that based on the record, the Board could have come to different reasonable conclusions.  However, this Court instructs that such Board decisions are the very ones that should be affirmed. Because the Board's factual findings were reasonable and supported by substantial evidence, this Court should not disturb them and affirm the Board's findings of non-obviousness.

Specifically, as to the *Kott* reference, the Board properly concluded that *Kott* does not teach or suggest a flexible hose between and in fluid communication with a cartridge and a static mixing nozzle because *Kott* teaches directly connecting its mixing tube and caulking gun.  Plas-Pak continues to rely on an improper combination of distinct embodiments of *Kott* supported by new arguments made for the first time on appeal.  The Board's factual findings in relation to *Kott* were based on substantial evidence, and the Board's holding of non-obviousness should be affirmed.

Additionally, the Board's factual determination that *Jacobsen* is directed to a device for dispensing materials into a surface crack while minimizing leakage was supported by substantial evidence.  As such, the Board's conclusion - that modifying the device of *Jacobsen* to include the paint applicators of *Hunter*, *Wise* or *Anson* would render the modified apparatus unsuitable for the intended purpose of *Jacobsen* - is reasonable and should be affirmed.

Plas-Pak's arguments regarding *Jacobsen* also reference the discussion of "high level ability" in *In re Mouttet*.  *Mouttet* does not relate to whether a proposed combination would render a reference unsuitable for its intended purpose and instead deals with changing the principle of operation of a reference.  Furthermore, *Mouttet* does not broadly stand for the proposition that a reference's principle of operation is equivalent to its "high level ability."  Instead, *Mouttet* refers to the

4

specific principle of operation at issue in that case - a reference's "high level ability to receive inputs into a programmable crossbar array and processing the output to obtain an arithmetic result."

As explained in detail below, Plas-Pak can point to no reason why the informed judgment of the Board should be disturbed, and, thus the holdings of the Board should be affirmed.

# ARGUMENT

## I.    STATEMENT OF THE STANDARD OF REVIEW

"The scope of [this Court's] review in an appeal from a Board decision is limited." *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1361 (Fed. Cir. 2012). Factual findings of the Board are reviewed for substantial evidence and legal conclusions of the Board are reviewed *de novo*. *Id.*; *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). "A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding." *Baxter*, 678 F.3d at 1361; *In re Kahn*, 441 F.3d 977, 985 (Fed. Cir. 2006).

This Court explained clearly in *Baxter* that the review of Board decisions is limited in appeals just as this where an obviousness determination is based on factual findings that only need be reviewed for substantial evidence. 678 F.3d at 1361 ("Although the ultimate determination of obviousness under 35 U.S.C. § 103 is a question of law, it is based on several underlying factual findings, including the differences between the claimed invention and the prior art. Similarly, the determination of what a reference teaches is a question of fact. Thus, we review those factual determinations for substantial evidence.") (internal citations omitted).

Substantial evidence may support a conclusion even where multiple conclusions are possible. As explained by this Court, "where two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an

6

agency's decision to favor one conclusion over the other is the ***epitome*** of a decision that must be sustained upon review for substantial evidence." *In re Mouttet*, 686 F.3d 1322, 1331 (Fed. Cir. 2012) (emphasis added) (quotation omitted); *see also Gartside*, 203 F.3d 1305 at 1312, 1316   (the possibility of drawing inconsistent conclusions from the evidence does not prevent the Board's findings from being supported by substantial evidence).

Plas-Pak has presented the standard of review in a fashion that confuses issues of fact with issues of law, when in reality, the issues Plas-Pak has presented for appeal are factual determinations reviewed for substantial evidence.  Appellee addresses the proper standard of review for the issues on appeal below.

### A.     The Board's Findings as to the Teachings of *Kott* Should Be Reviewed for Substantial Evidence

Plas-Pak does not cite the proper standard of review for the Board's findings regarding *Kott*.  Appellant's Brief, p. 25, l. 3 - p. 28, l. 6.  This Court has held that the Board's factual findings are upheld if supported by substantial evidence and that "[t]he ***scope and content of the prior art***, . . . are determinations of fact." *Mouttet*, 686 F.3d at 1330-31 (emphasis added).  The Board's determination that *Kott* fails to disclose the claimed flexible hose is a finding regarding the scope and content of *Kott* and, thus, must be reviewed for substantial evidence.

**B.    The Board's Determination of Intended Purpose Should Be Reviewed for Substantial Evidence**

The proper standard of review for a determination of whether a proposed combination is suitable for its intended purpose is also substantial evidence.  Plas-Pak tries to confuse the issue by stating that the Board's determination of *Jacobsen*'s intended purpose was "legal error."  Appellant's Brief, p. 40, l. 8-9.  However, factual determinations of the Board are reviewed for substantial evidence and, thus, must be upheld "if a reasonable mind might accept the evidence as adequate to support the factual conclusions drawn by the Board."  *Kahn*, 441 F.3d at 985.

This Court has held that "[t]he ***scope and content of the prior art***, as well as whether the prior art ***teaches away*** from the claimed invention, are ***determinations of fact***."  *Mouttet*, 686 F.3d at 1330 (emphasis added).  Furthermore, a reference teaches away from a combination when using it in that combination would produce a result inoperable for its intended purpose.  *In re Icon Health & Fitness, Inc.*, 496 F.3d 1374, 1382 (Fed. Cir. 2006) ("Icon correctly states the principle that a reference teaches away from a combination when using it in that combination would produce an inoperative result"); *see also Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1360 (Fed. Cir. 1999) ("If when combined, the references 'would produce a seemingly inoperative device,' then they teach away from their combination").  Therefore, determining whether a proposed combination would

render a reference unsuitable for its intended purpose is a question of fact that is reviewed for substantial evidence.

### C. *KSR* and the Proper Standard for Obviousness

While the Board's legal determinations are reviewed *de novo*, Plas-Pak is mistaken in its characterization of *KSR* and the relevant standards in determining obviousness. Although *KSR* holds that a combination of familiar elements according to known methods is likely obvious when it yields no more than a predictable result, the "predictable result" discussed in *KSR* still requires that the proposed combination would have worked for its intended purpose. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326 (Fed. Cir. 2009) (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416-17 (2007) ).

As explained in further detail below, Plas-Pak's proposed combinations would not have produced a predictable result or worked for their intended purpose and, thus, the Board's findings on the patentability of Claims 1 to 17 of the '170 Patent are supported by substantial evidence.

## II. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT *KOTT* FAILS TO DISCLOSE OR RENDER OBVIOUS THE USE OF A FLEXIBLE HOSE DISPOSED BETWEEN A MULTI-COMPONENT CARTRIDGE AND A STATIC MIXING NOZZLE

### A. *Kott* Fails to Explicitly Disclose a Flexible Hose Disposed between a Multi-Component Cartridge and a Static Mixing Nozzle

As noted by the Board, Plas-Pak "effectively concedes" that there is no

explicit disclosure in *Kott* of a flexible hose disposed between a multi-component cartridge and a static mixing nozzle.  JA7, l. 13-15.  The Board found that even if Plas-Pak's arguments regarding "design choice" and the combinability of Figures 1 and 8 of *Kott* are true, those arguments are directed to obviousness and "fall short of establishing an explicit disclosure in *Kott* of the use of a flexible hose disposed between a static mixing tube and a caulking gun."  JA8, l. 6-15.

Plas-Pak repeatedly asserts that *Kott* discloses "flexible hoses" 34a and 34b connecting containers 24a and 24b to a static mixer 94.  Appellant's Brief, p. 9, l. 6-12; p. 10, l. 2-5; p. 22, l. 15-16; p. 29, l. 13-14 and 18-20; p. 32, l. 1-7; p. 33, l. 13-15; p. 34, l. 11 and 15-17; p. 35, l. 5-15; p. 36, l. 1-4.  Plas-Pak further asserts that Figures 8 to 9 of *Kott* disclose a multi-component cartridge connected to a static mixing tube and that it would have been obvious to combine the cartridge of Figures 8 to 9 with the device of Figure 1 to obtain a device in which a flexible hose is disposed between the cartridge and the static mixing tube.  Appellant's Brief, p. 22, l. 11-19; p. 23, l. 8-10; p. 29, l. 6-20; p. 30, l. 1-7.

Plas-Pak must show that the Board's finding regarding *Kott* is unreasonable and, thus, is not supported by substantial evidence.  *See Mouttet*, 686 F.3d at 1331.  Plas-Pak's arguments regarding *Kott*'s disclosure of a flexible hose are insufficient to demonstrate that the Board's finding is unreasonable because the allegedly flexible material lines 34a and 34b of *Kott* are not located between a static mixing

nozzle and a multi-component cartridge.

      i.      **Material Lines 34a and 34b Are Not Located between a Static Mixing Nozzle and a Multi-Component Cartridge**

As properly determined by the Board, *Kott* fails to disclose that material lines 34a and 34b are located in the claimed location - <u>between a static mixing nozzle and a multi-component cartridge</u> as required by independent Claim 1 of the '170 Patent. JA7, l. 13-22; JA8, l. 6-8. Instead, the allegedly flexible lines of *Kott* are located between a static mixing nozzle and <u>containers</u>. Appellant's Brief, p. 29, l. 13-20 ("Kott teaches substantially all of the elements as claimed, including. . . at least one flexible hose disposed between and in fluid communication with the container and static mixing nozzle"). For example, Figure 1 of *Kott* teaches a spray gun in which material lines 34a and 34b are located between static mixing tube 94 and ***containers*** 24a and 24b:



containers

material lines

static mixing
tube

Figure 1

JA286, Fig. 1; JA295, [0026]; JA297, [0041].

In an ***entirely separate*** device, *Kott* shows a caulking gun configured to hold

two tubes 224a, 224b of material:



Figure 8

Figure 9

JA293, Figs. 8-9; JA300-01 [0078]; JA301, [0079]. However, the embodiment shown in Figs. 8 to 9 does not include any material lines. Furthermore, as explained in detail below, *Kott* fails to teach or even suggest that its material lines 34a, 34b may be used in the caulking gun of Figs. 8 to 9. Thus, even if material lines 34a and 34b could be considered "flexible" as asserted by Plas-Pak, substantial evidence supports the Board's finding that *Kott* fails to disclose that such lines are located ***between a static mixing nozzle and a multi-component cartridge***. JA7, l. 13-22; JA8, l. 6-8.

13

**B.    It Would Not Have Been Obvious to Include a Flexible Hose between the Mixing Nozzle and Caulking Gun of *Kott* because *Kott* Teaches Directly Connecting Its Caulking Gun and Mixing Nozzle**

Plas-Pak asserts that both the disclosure of *Kott* and Plas-Pak's view of "common sense" would motivate one skilled in the art to connect tubes 224a and 224b to mixing tube 94 in the caulking gun of *Kott*.  Appellant's Brief, p. 23, l. 8-13; p. 31, l. 7-12; p. 33, l. 13-20; p. 34, l. 18-20; p. 35, l. 1-3; p. 36, l. 1-4.  The Board correctly considered this very issue and determined that it would not have been obvious to merely include a flexible hose between tubes 224a and 224b and mixing tube 94 because *Kott* teaches directly connecting its mixing tube and caulking gun.  JA11, l. 1-12.

For example, *Kott* teaches that "[w]hen placed in abutment, the nozzles 226 on each tube 224a, 224b form a circle with an exterior thread 227 <u>sufficient to engage mixing tube 94</u>."  JA301, [0079], l. 4-6.  *Kott* further teaches that "[i]n use, the thread 227 is connected to the flared end of a mixing tube 94 (FIG. 3) with the opposing end of the tube 94 being connected to the spray tip 44 (FIG. 4) as previously described."  *Id.* at [0079], l. 6-9.  Taken together as a whole, these passages demonstrate that *Kott* only teaches ***directly connecting*** its mixing tube 94 and caulking gun tubes 224a and 224b.  Therefore, the Board's finding that it would not have been obvious to include a flexible hose between the mixing tube 94

14

and caulking gun tubes 224a, 224b of *Kott* is clearly supported by substantial evidence.

Furthermore, as the Board previously determined, Plas-Pak has failed to show the desirability or predictability in decoupling previously directly coupled components to provide a flexible hose between its mixing tube and caulking gun. JA11, l. 8-12.  For example, Plas-Pak asserts that *Kott* teaches the use of a flexible hose to allow for sufficient movement of its spray gun during spraying. Appellant's Brief, p. 33, l. 16-18.  However, the portion of *Kott* relied on by Plas-Pak fails to teach generally that flexible hoses are desirable and instead merely teaches that its material lines, though formed of a stiff material, must be "sufficiently flexible" for moving the spray gun during spraying.  JA297, [0042], l. 1-4.  In fact, *Kott* expressly teaches that lines that are too flexible "***will not produce as good [of] results*** in spraying."  *Id.* at [0042], l. 11-12 (emphasis added).  As such, if anything, *Kott* teaches that stiff, rather than flexible, lines are desirable.

Plas-Pak also asserts that "the Board acknowledged that replacing the direct connection between the cartridges and the mixing tube with a flexible hose connection would provide the predictable result that the caulking gun and mixing tube would still be in fluid communication with one another."  Appellant's Brief, p. 23, l. 1-4 p. 31, l. 13-14.  However, the Board merely noted that, although replacing the direct connection with a flexible hose would "***seemingly*** provide [a]

predictable result," Plas-Pak has failed to show the desirability to decouple the directly connected components. JA11, l. 4-12 (emphasis added).

Plas-Pak has failed to provide any other basis for demonstrating the desirability of providing a flexible hose between the directly coupled caulking gun and mixing tube of *Kott*.

### C.     Plas-Pak's Proposed Combination of Elements from Claims 1 and 15 of *Kott* Fails to Disclose a Flexible Hose Disposed between a Multi-Component Cartridge and a Static Mixing Nozzle

Plas-Pak now for the first time on appeal asserts that *Kott* provides the motivation to place a flexible hose between the multi-component cartridge of Figure 8 and the static mixing nozzle, because *Kott* teaches that the devices in Figures 1 and 8, or Claims 1 and 15, are combinable with each other. Appellant's Brief, p. 22, l. 17-19; p. 23, l. 8-10; p. 29, l. 8-10; p. 30, l. 5-7; p. 31, l. 7-12; p. 34, l. 1-2. However, as discussed below, *Kott*'s teachings regarding the combinability of Figures 1 and 8 and Claims 1 and 15 fail to suggest providing material lines 34a and 34b between a multi-component cartridge and a static mixing nozzle.

Plas-Pak asserts that it would have been obvious to couple an aperture of cartridges 224a and 224b of Figure 8, instead of containers 24a and 24b of Figure 1, to material lines 34a and 34b so that the material line is disposed between the cartridge and the static mixing nozzle merely because "both devices are explicitly disclosed as being combinable with one another." Appellant's Brief, p. 32, l. 1-6.

16

Plas-Pak relies on Claims 1 and 15 for the teaching that the elements of its caulking gun are combinable with the element of its spray gun. *Id.* at p. 22, l. 17-19; p. 23, l. 8-10; p. 29, l. 8-10; p. 30, l. 5-7; p. 31, l. 7-12; p. 34, l. 1-2.

However, Claims 1 and 15 of *Kott* merely disclose combining a spray system with a caulking gun by using the caulking gun ***in addition to*** the portable spray device. For example, Claim 1 recites a portable spray system comprising a spray gun and containers for holding coating materials. JA301, Claim 1. Claim 15 depends from Claim 1 and recites that the system "***further compris[es]*** a modified dual element caulking gun containing a tube of a second resin and a tube of activator." JA302, Claim 15 (emphasis added). As such, "when viewed in its totality" as suggested by Plas-Pak, Appellant's Brief, p. 29, l. 6-12, *Kott* merely teaches using its caulking gun 200, which contains tubes 224a and 224b, ***in addition*** to containers 24a and 24b, rather than in place of such containers.

This interpretation is further confirmed by the remaining disclosure of *Kott*. For example, *Kott* teaches that its portable spray system includes tanks 24a and 24b filled with an activator and a resin and that a "***further embodiment***" includes a caulking gun containing a ***second colored resin*** and activator for ***decorative coloring or texturing***. JA285, Abstract; JA294, [0005]; JA300-01, [0078] (emphasis added). *Kott* discloses that its caulking gun is used "to apply a finish color or texture" to the spray coating 52 using "a second resin" different than the

first resin contained in the tanks.  JA300-01, [0078], l. 1-3 and 7-13.  Therefore, *Kott* is entirely directed to using both cartridges 224a and 224b and tanks 24a and 24b (and first and second resins).  Thus, it would not have been obvious to substitute cartridges 224a and 224b for tanks 24a and 24b to provide lines 34a and 34b between the caulking gun and the mixer.

### D.    Providing a Flexible Hose between Mixing Nozzle 94 and Tubes 224a and 224b Would Not Have Been a Predictable Variation

Plas-Pak argues that replacing the direct connection between mixing tube 94 and material tubes 224a and 224b with a flexible hose would have been a predictable variation under *KSR* because *Kott* teaches that employing such a flexible hose would beneficially increase the mobility and range of the spray gun.  Appellant's Brief, p. 33, l. 13-17; p. 34, l. 6-10.  Not so.  *Kott* fails to teach that making material lines 34a and 34b flexible to increase mobility of the spray gun is desirable.  Instead, *Kott* teaches that high strength is the most important feature of its material lines and that the line need only be "sufficiently flexible" for moving the spray gun during spraying.  JA297, [0041], l. 3-7; [0042], l. 1-4.

*Kott* further teaches that "[*m]ore flexible lines will not produce as good [of] results* in spraying."  *Id.* at [0042], l. 11-12 (emphasis added).  As such, substantial evidence supports the Board's finding that providing a flexible hose between mixing tube 94 and tubes 224a and 224b would not have been a predictable variation that is a matter of "common sense" to one of ordinary skill in the art.

**E.    Plas-Pak's New Arguments Regarding Claims 1 and 15 of *Kott* Have Been Waived**

Not only are Plas-Pak's arguments regarding *Kott* improper on the merits as explained above - certain of these arguments were waived long ago by not making them before the Board.  Specifically, Plas-Pak waived its arguments regarding the combinability of Figures 1 and 9 of *Kott* based on Claims 1 and 15 of *Kott*.  Plas-Pak cannot introduce this new theory for the first time on appeal.

As this Court explained *In re Watts*, "[t]he Board is an expert body that plays an important role in reviewing the rejection of patent applications.  In a proceeding before the Board the applicant is given full 'opportunity to bring forth the facts thought necessary to support his or her position.'"  354 F.3d 1362, 1367 (Fed. Cir. 2004) (affirming Board) (citing *Gartside*, 203 F.3d at 1314 (affirming Board)).  The Court further explains in *In re Watts* that "[o]n appeal to this court, 'we have before us a comprehensive record that contains the arguments and evidence presented by the parties' and our review of the Board's decision is confined to the 'four corners' of that record . . . [I]t is important that the applicant challenging a decision not be permitted to raise arguments on appeal that were not presented to the Board." *Id.*

This Court has repeatedly rejected arguments not presented to the Board, and the facts of this case indeed compel the same result.  *See, e.g., In re Berger*, 279 F.3d 975, 984 (Fed. Cir. 2002) (affirming Board and declining to consider the

merits of indefiniteness rejections not contested before the Board); *In re Schreiber*, 128 F.3d 1473, 1479 (Fed.Cir.1997) (affirming Board and declining to consider whether prior art cited in an obviousness rejection was non-analogous art when that argument was not raised before the Board).[1]

Here, Plas-Pak has waived its arguments regarding the combinability of the embodiment of Figure 1 of *Kott* with the embodiment of Figures 8 and 9 based on Claims 1 and 15, by failing to present these issues first to the Board. Plas-Pak's description of *Kott* to encompass Figure 9 and the comparison of Claims 1 and 15 improperly extends the scope of prior art passages relied upon by the Board. Appellant's Brief at p. 10, l. 7-9; p. 29, l. 6-12; p. 30, l. 5-7; p. 31, l. 7-12; p. 34, l. 1-2. Just as in *In re Watts*, "[b]ecause the appellant failed to argue [its] current interpretation of the prior art below, [this Court] do[es] not have the benefit of the Board's informed judgment on this issue for [its] review," as these arguments were

---

[1] This is the same rule this Court follows in appeals from district courts and other agencies. *In re Watts*, 354 F.3d at 1368 (citing *Forshey v. Principi*, 284 F.3d 1335, 1355 (Fed. Cir. 2002) (*en banc*) (explaining that generally appellate courts should not hear issues not considered below) and *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997). The Court's directive in *Sage Products* could not be clearer — "This is an appellate court. By and large, it is our place to review judicial decisions . . . reached by trial courts. . . . With a few notable exceptions, such as some jurisdictional matters, ***appellate courts do not consider a party's new theories, lodged first on appeal***." *Sage Prods.*, 126 F.3d at 1426 (emphasis added).

never made.   354 F.3d 1362 at 1368.   Therefore, these arguments, although substantively flawed, should be disregarded.

## III. *WISE*, *ANSON*, *HANSEN* AND *HERMELE* FAIL TO REMEDY THE DEFICIENCIES OF *KOTT*

As discussed previously, *Kott* fails to disclose or render obvious the use of a flexible hose disposed between a multi-component cartridge and a static mixing nozzle as required by Claim 1 of the '170 Patent.  Plas-Pak relies on *Wise* and *Anson* for the disclosure of various other paint applicators, such as a brush, a roller and a perforated roller as recited in Claims 6 to 8.  Appellant's Brief, p. 36, l. 17-21; p. 37, l. 1-8 and 14-18.  However, *Wise* and *Anson* fail to teach a flexible hose between a multi-component cartridge and a mixing nozzle.  Thus, the combinations based on *Kott*, *Wise* and *Anson* fail to render Claims 1 and 6-8 obvious.

With respect to Claims 12 to 17, Plas-Pak relies on *Hansen* for the disclosure of an epoxy composition as a multi-component reactive mixture and *Hermele* for the disclosure of a non-skid, two-part curable epoxy composition. Appellant's Brief, p. 38, l. 7-17; p. 39, l. 5-13.  The Board correctly found that *Kott* fails to disclose a flexible hose disposed between a static mixing nozzle and a multi-component cartridge.   JA7, l. 13-22; JA8, l. 6-8.   Nothing in *Hansen* or *Hermele* suggests that providing such a flexible hose would have been obvious. As such, *Hansen* and *Hermele* fail to remedy the deficiencies of *Kott* as properly determined by the Board.  JA18, l. 1-13.

21

**IV.  SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT MODIFICATION OF THE DISPENSING APPARATUS OF *JACOBSEN* WITH A SPRAY TIP, A ROLLER OR A BRUSH WOULD RENDER THE DISPENSING APPARATUS OF *JACOBSEN* UNSUITABLE FOR ITS INTENDED PURPOSE**

**A.    The Board Correctly Defined *Jacobsen*'s Intended Purpose as Dispensing Fluid Material into Cracks While Minimizing Leakage**

A determination of a reference's intended purpose is a factual finding that must be reviewed for substantial evidence.  *See Mouttet*, 686 F.3d at 1330-31; *Icon Health & Fitness*, 496 F.3d at 1382; *see also Tec Air, Inc.*, 192 F.3d at 1360. Therefore, even if two different determinations as to the intended purpose can reasonably be drawn from the record evidence, the Board's decision to favor one over the other should be sustained.  *Mouttet*, 686 F.3d at 1331.

As the Board properly found, *Jacobsen* is directed to a device for dispensing materials ***into a surface crack while minimizing leakage***, not directed generally to a kit-like system and apparatus for dispensing a multiple component reactive material from cartridges as Plas-Pak contends.  JA13, l. 19-25; JA15, l. 1-20.  For example, when describing its "invention," rather than a specific embodiment, *Jacobsen* states that "[t]his invention relates to devices usable for dispensing fluid material(s) via conventional dispensing outlet nozzle(s) ***directly into a surface crack*** of a structure, such as concrete floors, walls or ceilings."  JA236, col. 1, l. 13-16 (emphasis added).

*Jacobsen* further states that its "invention relates to devices for establishing

22

**leak proof** seated connections with great universality of use with many different types and sizes of dispensing tubes, nozzles, surface ports used in dispensing fluid material from cartridges, for **directing such fluid material into cracks** in underlying structures." *Id.* at col. 2, l. 40-45 (emphasis added).  Because these passages of *Jacobsen* refer to the entire "invention," the Board correctly determined that the intended purpose of dispensing material directly into a surface crack applies to the entire invention - not just one embodiment.

In support of its assertion that *Jacobsen* has an intended purpose beyond filling cracks, Plas-Pak notes that *Jacobsen*'s Abstract makes no mention of filling cracks.  Appellant's Brief, p. 42, l. 15-16.  However, the portion of *Jacobsen* relied on by Plas-Pak also teaches that the components must be mixed "in close proximity of the intended use of the material."  JA230, Abstract, l. 5-6.  This indicates that the intended purpose is narrower than merely a general kit dispensing system as asserted by Plas-Pak.  Furthermore, this passage is consistent with the intended purpose of dispensing materials directly into cracks while minimizing leakage.

Plas-Pak also attempts to analogize *Jacobsen*'s intended purpose to its "high level ability" by relying on this Court's holding in *Mouttet*.  Appellant's Brief, p. 43, l. 12-15.  However, the "high level ability" referred to in *Mouttet* was case-specific and was not related to a general legal standard.  *Mouttet*, 686 F.3d at 1332

("[T]he principle of operation of *Falk's computing device* is its high level ability *to receive inputs into a programmable crossbar array and processing the output to obtain an arithmetic result*") (emphasis added).  Furthermore, *Mouttet* dealt with changing the principle of operation of a reference, not whether the proposed combination would be suitable for the intended purpose of a reference.  *Id.* at 1331-32.  Therefore, Plas-Pak's arguments regarding *Jacobsen*'s "high level ability" are irrelevant to *Jacobsen's* intended purpose.[2]

Taken as a whole, *Jacobsen* indicates that the purpose of its "invention" is dispensing material directly into cracks with minimal leakage.  JA236, col. 1, l. 13-16; col. 2, l. 40-45.   In addition, even if Plas-Pak's conclusion were reasonable that *Jacobsen*'s intended purpose should be more broadly defined as generally dispensing materials using a kit-like dispensing system, Plas-Pak must still show that the Board's finding was unreasonable.  *Mouttet*, 686 F.3d at 1330-31.  For the reasons discussed above, the Board's conclusion that the intended purpose of *Jacobsen* is dispensing materials directly into cracks while minimizing leakage is at least reasonable.  As such, the Board's finding regarding the intended purpose of *Jacobsen* is not legal error and instead is supported by substantial evidence.

---

[2] Even under Plas-Pak's standard, *Jacobsen*'s "high level ability" is dispensing material directly into cracks while minimizing leakage.  JA236, col. 1, l. 13-16; col. 2, l. 40-45.

i.    **Plas-Pak's References to *KSR* Are Inapposite to the Issue of Whether the Proposed Combination Would Have Rendered *Jacobsen* Unsuitable for its Intended Purpose**

The Board properly found that the proposed combination would render *Jacobsen* unsuitable for its intended purpose. JA15, l. 17 - JA16, l. 11. Plas-Pak cites to *KSR*'s discussion of the references at issue in that case and the differences in their intended purpose. Appellant's Brief, p. 40, l. 16-18; p. 41, l. 9-20; p. 42, l. 1-14. However, the "intended purpose" discussed in *KSR* is different because it relates to the field of endeavor or whether a certain reference constitutes analogous art to the patent at issue. *KSR*, 550 U.S. at 420-21. In contrast, here the issue is whether a proposed combination would render a reference **unsuitable for its intended purpose**. Post-*KSR* cases, such as *DePuy* and *Broadcom*, recognize that a proposed combination is not obvious if it would render a reference unsuitable for its intended purpose. *DePuy*, 567 F.3d at 1326; *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1335 (Fed. Cir. 2013).

Plas-Pak also relies on *KSR* for its assertion that one of ordinary skill in the art would not ignore *Jacobsen* merely because *Jacobsen*'s device can be used to fill cracks. Appellant's Brief, p. 44, l. 19-22. However, the issue is not whether *Jacobsen* would be considered by one of ordinary skill in the art, but whether the proposed modification of *Jacobsen* would have been obvious because it renders *Jacobsen* unsuitable for its intended purpose. As such, Plas-Pak's arguments

regarding *KSR* are irrelevant to the determination of *Jacobsen*'s intended purpose.

> ii.    **The Scope of *Jacobsen*'s Claims Is Not Dispositive of its Intended Purpose**

Plas-Pak also notes that the claims of *Jacobsen* are not limited to filling cracks.  Appellant's Brief, p. 43, l. 3.  However, as repeatedly pointed out by Plas-Pak, a reference must "be read for **all** that it teaches."  *Mouttet*, 686 F.3d at 1331 (emphasis added).  Therefore, the scope of the claims is not dispositive of the "intended purpose" of a reference and, thus, *Jacobsen*'s use of broadly drafted claims does not alter the scope of its intended purpose for obviousness purposes.

> **B.    Substantial Evidence Supports the Board's Finding that Modifying the Apparatus of *Jacobsen* with the Spray Nozzle of *Hunter* Would Render the Dispensing Apparatus of *Jacobsen* Unsuitable for its Intended Purpose**

As discussed previously, the intended purpose of *Jacobsen* is to directly dispense fluid materials into a surface crack.  JA236, col. 1, l. 13-16; col. 2, l. 40-45.  *Jacobsen* further teaches that one primary goal is to minimize or avoid leakage of the material when dispensing the material into surface cracks.  JA236, l. 40-45; JA237, col. 4 l. 1-14; col. 5, l. 44-67; JA238, col. 6, l. 1-14.

In contrast, *Hunter* is entirely directed to a spray nozzle for spraying a two-component coating composition.    JA242, Title; Abstract; JA245, [0002] and [0012]-[0022].  One of ordinary skill in the art would have no reason to substitute the controlled dispensing nozzle of *Jacobsen* with the spray nozzle of *Hunter*

because it would not minimize leakage or allow for controlled dispensing of a material into small areas such as surface cracks and would thus render the device of *Jacobsen* unsuitable for its intended purpose - controlled dispensing into cracks. Substantial evidence therefore supports the Board's findings that: (1) Claims 1 and 9 to 11 are not obvious in view of Plas-Pak's proposed combination of *Jacobsen* and *Hunter*; (2) Claims 12 to 17 are not obvious in view of *Jacobsen*, *Hunter* and *Hansen*; and (3) Claims 12 to 13 and 15 to 16 are not obvious in view of *Jacobsen*, *Hunter* and *Hermele*.

> **C.     Substantial Evidence Supports the Board's Finding that Modifying the Apparatus of *Jacobsen* with the Paint Applicators of *Wise* or *Anson* Would Also Render the Dispensing Apparatus of *Jacobsen* Unsuitable for its Intended Purpose**

Modifying the surface crack-dispensing device of *Jacobsen* with the larger-area paint applicators of *Wise* and *Anson* would render the proposed device unsuitable for its intended purpose. *Jacobsen*'s intended purpose is to directly dispense fluid materials into surface cracks with minimal leakage. JA236, col. 1, l. 13-16; col. 2, l. 40-45; JA237, col. 4 l. 1-14; col. 5, l. 44-67; JA238, col. 6, l. 1-14. In contrast, *Wise* is entirely directed to a mobile <u>house painting</u> device using <u>a truck</u>. JA250, Title; Abstract; JA257, col. 1, l. 5-12. *Wise* teaches that its automatic house painting device can include a paint applying means such as a brush, a roller or a spray gun. JA257, col. 1, l. 33-36. *Anson* is directed to a continuous flow paintbrush that accelerates the speed of brush painting. JA265, Title; col. 1, l. 1-10.

27

Case: 14-1451    Document: 24    Page: 33    Filed: 08/25/2014

One of ordinary skill in the art would have no reason to substitute the controlled dispensing nozzle of *Jacobsen* with the rollers, brushes or spray guns of *Wise* and *Anson* because such a modification would not minimize leakage or allow for controlled dispensing of a material into small areas such as surface cracks and would thus render the device of *Jacobsen* unsuitable for its intended purpose. Therefore, the proposed combinations based on *Kott*, *Wise*, *Anson, Flackett* and *Gaither* would not have been obvious.

### D.    Plas-Pak's Reliance on *Mouttet* for its Alleged "High Level Ability" Test Has Been Waived

Plas-Pak's newly invented "high level ability" principle of operation standard is improper new argument neither raised before the Board nor a part of the "four corners" of the record in this case.[3]  Appellant's Brief, p. 23, l. 20; p. 24, l. 1-2; p. 40, l. 10-15; p. 43, l. 12-15.  The *Mouttet* decision was published on June 26, 2012.  Plas-Pak filed its Appeal Brief to the Board on March 9, 2012 and its Petition for Rehearing on July 30, 2013.  Plas-Pak could have introduced this case at the time of its rehearing request, but failed to do so.  Plas-Pak has thus waived these arguments.  *See Watts*, 354 F.3d at 68 (citing *Forshey*, 284 F.3d at 1355

---

[3] Furthermore, the determination of whether a reference's principle of operation is changed by a proposed combination is a separate and distinct issue from whether a proposed combination renders a reference unsuitable for its intended purpose. *See Mouttet*, 686 F.3d at 1332; *DePuy*, 567 F.3d at 1326.  Therefore, Plas-Pak's statements regarding a references "high level ability" are irrelevant to the determination of *Jacobsen*'s intended purpose.

28

(noting that failure to raise an argument below may be excused if based on <u>new</u> <u>precedent</u>)).

## **CONCLUSION**

For the reasons discussed above, this Court should reject Plas-Pak's appeal, and affirm the Board's finding that Claims 1 to 17 of the '170 Patent are patentable over the references cited in the reexamination.

Respectfully submitted,

 /s/ Thomas C. Basso

| | |
|---|---|
| THOMAS C. BASSO<br>ALAN L. BARRY<br>MATTHEW S. DICKE<br>SUZANNE E. KONRAD<br>K&L GATES LLP<br>70 West Madison Street<br>Suite 3100<br>Chicago, IL  60602-4207<br>Telephone (312) 372-1121<br>Facsimile (312) 827-8000 | MICHAEL T. MURPHY<br>K&L GATES LLP<br>1601 K Street, NW<br>Washington, DC  20006-1600<br>Telephone (202) 778-9000<br>Facsimile (202) 778-9100 |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2014, true and correct copies of the foregoing **APPELLEE'S BRIEF** were electronically filed through the Court's ECF system and served via the Court's transmission of the Notice of Docket Activity to all counsel of record, and two courtesy copies of this document will be sent to the party below:

Andrew C. Ryan
Cantor Colburn LLP
20 Church Street
22nd Floor
Hartford, CT 06103
Phone: 860-286-2929
Email: ryan@cantorcolburn.com

I further certify that I will file twelve copies of the foregoing with the Clerk of Court by Federal Express to:

Clerk of Court
United States Court of Appeals for the
Federal Circuit
717 Madison Place, NW
Washington, DC 20005

/s/    Thomas C. Basso
        Thomas C. Basso

Form 19

FORM 19. Certificate of Compliance With Rule 32(a)

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑    The brief contains [        6,414        ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐    The brief uses a monospaced typeface and contains [        ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑    The brief has been prepared in a proportionally spaced typeface using
[                Microsoft Word 2010                ] in
[            14 pt Times New Roman font            ], or

☐    The brief has been prepared in a monospaced typeface using
[                                ] with [
[                                ].

_Thomas C. Basso_

(Signature of Attorney)

Thomas C. Basso

(Name of Attorney)

Attorney for Appellee

(State whether representing appellant, appellee, etc.)

August 25, 2014

(Date)

Reset Fields

142